| | | | |
|---|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | AUSA: Matthew Roth<br>Special Agent: Matthew Rummel | Telephone: (313) 226-9186<br>Telephone: (313) 202-3400 | |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

United States of America
   v.

Tirique Faulkner

Case No. 2:24−mj−30328

**CRIMINAL COMPLAINT**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 8, 2024__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in posession of a firearm |
| 18 U.S.C. § 924(c) | Possessed a firearm during and in relation to a drug trafficking crime |
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute controlled substance |

This criminal complaint is based on these facts:
see attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Matthew Rummel, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: August 7, 2024

*Judge's signature*

City and state: Detroit, MI

Hon. Elizabeth A. Stafford United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Matthew Rummel, being first duly sworn, hereby depose and state as follows:

## I.  INTRODUCTION AND BACKGROUND

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since September 2014. I have a bachelor's degree in criminal justice. I am a graduate of the Federal Law Enforcement Training Center Criminal Investigator School and the ATF's Special Agent Basic Training School. Prior to joining the ATF, I was employed, for approximately eight years, as a Parole Agent with the Michigan Department of Corrections (MDOC). For four of those years, I was assigned to a multi-jurisdictional task force comprised of federal, state, and local law enforcement agencies. Collectively, I have over seventeen years of experience in law enforcement.

2. This affidavit is based on information I have gained from my investigation, my training and experience, from information provided by law enforcement officers, and information from others who have personal knowledge of the events and circumstances described herein.

3. The information set forth in this affidavit is for the limited purpose of establishing probable cause and does not include all the information known to law enforcement related to this investigation.

4. I submit this affidavit in support of a criminal complaint charging Tirique FAULKNER (DOB XX/XX/1994), an individual who was convicted of a crime punishable by imprisonment for a term exceeding one year, with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c), and possession with intent to distribute and distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

## II.  PROBABLE CAUSE

A.  <u>FAULKNER has an extensive criminal history</u>.

5. I reviewed records from MDOC and the National Crime Information Center (NCIC). The records revealed that Tirique FAULKNER had sixteen criminal arrests spanning from 2007 to 2018. These arrests included three adult felony convictions. Two of the convictions were pleas of guilty to Carrying a Concealed Weapon and Possession of a Controlled Substance. The felonies were punishable by

more than a year in prison. FAULKNER has been sentenced to prison three times.

6. FAULKNER has three domestic violence convictions. He pleaded guilty to domestic violence in March of 2013 and July of 2013. He pleaded guilty to misdemeanor domestic violence and/or knowingly assaulting a pregnant individual second offense on or about March of 2014.

7. In 2020, FAULKNER pleaded no contest to Felony Homicide – Manslaughter, for delivery of a controlled substance causing death. He was sentenced in Lenawee County to 43 months to 15 years in prison. In December of 2022, FAULKNER was paroled by the Michigan Department of Corrections.

B. <u>FAULKNER possessed a firearm less than a year after he was released on parole</u>.

8. On or about September 22, 2023, Blackman Township Public Safety responded to a call at a car dealership. The dealership reported that their staff observed FAULKNKER armed with a firearm. Specifically, he had $3,000 in cash and a silver semi-automatic handgun.

-3-

9. FAULKNER was angry he could not finance the purchase of a vehicle. He told the staff he was recently released from prison, that he "was leaving with this car today," and lifted his shirt to show he possessed a second firearm, that was black, near his right waistband. FAULKNER continued to make comments and told the staff, "how things were going to go."

10. FAULKNER left the car dealership and told the staff he would be back in 45 minutes. He never returned.

C. <u>The ATF began a drug investigation into FAULKNER</u>.

11. After the incident at the car dealership, the ATF learned that FAULKNER was possibly involved in controlled substances again. An investigation into FAULKNER confirmed that, while on parole, he was selling controlled substances. From December 2023 through January 2024, an undercover ATF Special Agent conducted multiple controlled purchases of methamphetamine from FAULKNER. The methamphetamine sold by FAULKNER was tested by the Drug Enforcement Administration (DEA) North Central Laboratory. The tests showed that, in total, FAULKNER sold the undercover agent 551

grams of pure methamphetamine. The drugs were purchased in Jackson, Eastern District of Michigan.

12. On February 8, 2024, based, in part, on the aforementioned controlled purchases, law enforcement served a federal search warrant at FAULKNER's residence in Jackson, Michigan.

13. As perimeter units from the Michigan State Police (MSP) surrounded the residence, a MSP detective heard a noise from the second story. The detective looked up and observed a person withdrawing back into a second story window. When the detective looked at the ground, he discovered a semi-auto Smith & Wesson, Model: SD9VE, Cal: 9mm, handgun loaded, with fifteen rounds, under the same window. Near the firearm was a black travel bag. Inside the bag was approximately 539 grams of packaged suspected crystal methamphetamine.

14. Inside the residence, agents encountered FAULKNER, his girlfriend, and a minor child, who lived in the second story apartment.

15. Agents also recovered approximately 26 grams of suspected crystal methamphetamine and a digital scale. In the kitchen, I observed a window ajar, with a torn screen. Below the window, on the ground

next to the residence, was the location where the loaded firearm and the black travel bag with suspected methamphetamine was recovered.

16. FAULKNER was advised of his *Miranda* Rights, and agreed to answer questions. FAULKNER made the following statements:

   a. He was currently on parole and had lived at the residence for approximately eight months;

   b. He possessed the Smith & Wesson handgun, which he obtained on/or about September 2023;

   c. He possessed the crystal methamphetamine and explained that the drugs were delivered to the residence a few hours before the execution of the search warrant; and

   d. The black travel bag contained one-pound-three-ounces of methamphetamine.

17. The suspected methamphetamine recovered from the black travel bag was tested by the DEA North Central Laboratory. The DEA determined the substance was 527 grams of methamphetamine hydrochloride and dimethyl sulfone. Lab tests showed that the methamphetamine was approximately 93% pure.

18. On July 30, 2024, an ATF Interstate Nexus authority, S/A Josh McLean, reviewed the make, model, and information for the Smith & Wesson. Special Agent McLean determined that the firearm was manufactured outside of the state of Michigan and traveled in and affected interstate or foreign commerce.

19. Probable cause exists that FAULKNER knew he was a felon. Based on my training and experience, when an individual pleads guilty to a felony, the court will advise him of the maximum possible sentence which, in Michigan, is always greater than one year. Further, that upon his plea, he will be considered a felon. FAULKNER also served multiple parole terms. I know that offenders who serve parole terms with MDOC are informed by their parole agents that they are prohibited from possessing firearms, due in part to their status as felons.

### III. CONCLUSION

20. Probable cause exists that Tirique FAULKNER, knowing he had been convicted of at least one crime punishable by imprisonment for a term exceeding one year, possessed a firearm, in violation of 18 U.S.C. § 922(g)(1). Probable cause also exists that FAULKNER possessed a firearm during and in relation to a drug trafficking crime,

in violation of 18 U.S.C. § 924(c), and possessed with intent to distribute and distributed methamphetamine, in violation of 21 U.S.C. § 841(a)(1), within the Eastern District of Michigan.

Respectfully submitted,

_____
Matthew Rummel, Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn to before me and signed in my
Presence and/or by reliable electronic means.

_____
Hon. Elizabeth A. Stafford
United States Magistrate Judge

Date: August 7, 2024